19-CV-81629-DMM/BRANNON

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### (Fort Lauderdale Division)

```
FILED BY        /s/        D.C.

DEC - 5 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.
```

-------------------------------------------------------------------x

**ROCHELL GERONIMO,**
                                        *Plaintiff,*

   - against -

**MANAGEMENT HEALTH SYSTEMS,**
**LLC d/b/a MEDPRO HEALTHCARE**
**STAFFING and PATTY JEFFREY,**
                                        *Defendants.*

-------------------------------------------------------------------x

Index No. 19-cv-_____

**COMPLAINT**

    **Plaintiff** ROCHELL GERONIMO, *pro se,* as and for her complaint against Defendants Management Health Systems, LLC and Patty Jeffrey, alleges as follows:

### PRELIMINARY STATEMENT

    1.    This is an action for damages and injunctive relief for violations of the Trafficking Victims Protection Act, (TVPA), 18 U.S.C. §§ 1589, *et seq.*, for breach of the parties' employment contract, and for a declaratory judgment that the "payment due to pretermination" indenture provision and a nationwide, one-year non-compete clause in the employment contract are unenforceable under the TVPA, the 13th Amendment to the United States Constitution, and common law.

    2.    This action arises out of Defendants' recruitment, provision and/or obtaining of Plaintiff's labor or services through the use of fraud and the abuse of the immigration process that resulted in the forced labor and wage exploitation of the Plaintiff by Defendants.

    3.    Defendants made false and fraudulent promises in their immigration sponsorship petitions with regard to the payment of prevailing wage to lure Plaintiff into employment, only

1

for the Plaintiff to later realize Defendants did not correctly pay her the offered prevailing wage rate.

4.     Plaintiff was forced under the circumstances to continue working for Defendants despite her complaints of not being paid the prevailing wage rate because of Defendants' threats to have her pay pursuant to the contract's "payment due to pretermination" indenture provision.

5.     Plaintiff seeks: compensatory and punitive damages for violations of the Trafficking Victims Protection Act (18 U.S.C. §1589 and 18 U.S.C. §1590); compensatory damages and pre- and post-judgment interest for breach of contract; an injunction prohibiting Defendants from threatening to enforce or enforcing the indenture and non-compete clauses in the employment contract; a declaration that the indenture and non-compete clauses are unenforceable under the TVPA and the 13th Amendment to the U.S. Constitution, 42 U.S.C. § 1994; an award of reasonable attorney's fees[1] and costs as authorized by 18 U.S.C. 1595(a); and such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 18 U.S.C. §1595(a) (Trafficking Victims Protection Act) (TVPA, 18 U.S.C. 1589, 1590), in that these claims are asserted under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's pendent state/common law claims pursuant to 28 U.S.C. §1367 because these state/common law claims form part of the same case or controversy as the federal law claims.

7.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the Southern

---

[1] While Plaintiff is filing this complaint on a *pro se* basis, she intends to retain the services of counsel admitted to practice before this Court to prosecute her case.

District of Florida. Venue is also proper in this Court under 28 U.S.C. §1391(c) because Defendant company is deemed to reside in this judicial district where Defendant company has owned, operated, managed, and maintained a healthcare staffing company where the Plaintiff was employed and is subject to personal jurisdiction.

## PARTIES

8.      Plaintiff ROCHELL GERONIMO ("Plaintiff") is a physical therapist licensed in the states of Florida and New Mexico, and an employee of the Defendants. She is a citizen of the Philippines and presently resides in Alamogordo, New Mexico.

9.      Defendant MANAGEMENT HEALTH SYSTEMS, LLC, doing business as MEDPRO HEALTHCARE STAFFING ("Defendant MedPro") is, upon information and belief, a limited liability company duly organized and existing under the laws of the state of Florida. Likewise upon information and belief, it maintains an office at 1580 Sawgrass Corporate Parkway, Suite 100, Sunrise, FL 33323, within this District.

10.     Upon information and belief, Defendant MedPro was, at all times relevant, a healthcare staffing services provider, and was engaged in providing physical therapists, among other healthcare professionals, to work at various healthcare facilities within the United States, including in counties covered by this District.

11.     Defendant PATTY JEFFREY ("Jeffrey") was, upon information and belief, at all times relevant, the Vice President of International Operations, an executive officer, and/or agent of Defendant MedPro.

12.     Upon information and belief, Defendants MedPro and Jeffrey had the power to hire and fire the Plaintiff, establish and pay her wages, set her work schedules and maintain her employment records.

13.     At all relevant times, and upon information and belief, Defendants MedPro and Jeffrey transacted business communications and negotiated agreements from their Florida office with their clients and/or employees, utilizing in the process the postal service or other courier delivery service, the phone, fax, and/or email communications systems that moved along interstate boundaries.

14.     Upon information and belief, at all relevant times, Defendants MedPro and Jeffrey regularly communicated with their employees, including herein Plaintiff, through phone, text, fax and/or email service systems. From their Florida office, Defendants gave instructions to their employees with regard to their staffing assignments and/or instructions, and, upon information and belief, made inter-bank transactions, such as making direct deposits to their employees' bank accounts from their banks opened and maintained in Florida.

15.     Upon information and belief, at all relevant times, Defendants sourced out and entered into staffing agreements with healthcare facilities located all over the country, and in the process engaged in acts that have effects in Florida, such as when they signed staffing agreements with healthcare facilities, and/or sent staffing agreements or staffing assignments to their clients or to their employees, including to herein Plaintiff, out of their Florida office.

16.     Defendants, through their case managers and therapy recruiters, communicated with Plaintiff, during all times relevant, either through phone, text, and/or email communications, and gave instructions to Plaintiff regarding Plaintiff's immigration sponsorship issues, work assignments, scheduling, duties, and payroll issues.

17.     Upon information and belief, at all times relevant, Defendants MedPro and Jeffrey determined Plaintiff's places of employment, established the terms of her employment, controlled her work schedules and supervised her work.

18.     Defendant Jeffrey, upon information and belief, exercised complete domination and control of Defendant MedPro in respect to the conduct alleged in this Complaint, including violations of the Trafficking Victims Protection Act designed to coerce the continued performance of Plaintiff under her employment contract notwithstanding the Defendants' failure to pay the required prevailing wage.

19.     Defendant Jeffrey, upon information and belief, used her complete domination and control of Defendant MedPro to commit wrongs against Plaintiff, including violations of the Trafficking Victims Protection Act designed to coerce the continued performance of Plaintiff under her contract notwithstanding the Defendants' failure to pay the contracted prevailing wage rate.

20.     Defendants MedPro and Jeffrey are associated in fact and comprise a venture as that term is used in the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589 and 1595.

21.     All of the acts alleged in this Complaint were authorized, ordered, and implemented by Defendants.

## STATEMENT OF FACTS

22.     Plaintiff is a physical therapist by training or education, having graduated with a Bachelor's degree in Physical Therapy from an educational institution in the Philippines.

23.     At all times relevant, Plaintiff was licensed to practice physical therapy in the states of Florida and New Mexico.

24.     Defendants recruited the Plaintiff from the Philippines to work for them as a Physical Therapist in the United States.

25.     Upon information and belief, for more than ten years, Defendants MedPro and Jeffrey have recruited Filipino physical therapists to work for their company. Throughout this

time, the Defendants have required the Filipino physical therapists to execute a standard employment contract.

26.     Pursuant to their recruitment efforts, Defendants, on or about September 17, 2015, required Plaintiff to sign the Defendants' standard employment contract to work for them. The contract was countersigned by Defendant Jeffrey on behalf of Defendant MedPro.

27.     The Defendants' standard employment contract provides that the employee ("Healthcare Professional") promises to work for Defendants for the "employment term" of "four year period".

28.     The Defendants' standard employment contract likewise provides that the Healthcare Professional shall "be paid the higher of the prevailing wage for the occupation as determined by the United States Department of Labor for the particular work site to which Healthcare Professional is assigned, or the actual wage that the Employer pays to similarly employed workers in the location where the Healthcare Professional is assigned".

29.     The Defendants' standard employment contract likewise provides that the "Employer will provide one-time start-up compensation to Healthcare Professional in the net amount of Two Thousand Five Hundred Dollars ($2,500.00) payable in three equal installments upon completion of Employer's orientation program".

30.     Upon information and belief, Defendants filed an H-1B petition on behalf of Plaintiff in 2017 for the position of Physical Therapist.

31.     Upon information and belief, Defendants caused one of its healthcare facility-clients, Ultimate Care, Inc., to also file an H-1B petition on behalf of the Plaintiff in 2017 to increase the chances of getting Plaintiff to come and work in the United States as a Physical Therapist.

32.     Due to the annual cap of H-1B visas that can be issued, H-1B or non-immigrant petitions were and continue to be processed and picked through a random lottery system.

33.     Upon information and belief, Defendant MedPro's H-1B petition on behalf of the Plaintiff was not picked in the H-1B lottery system.

34.     Upon information and belief, the H-1B petition filed by Ultimate Care, Inc. was picked in the H-1B lottery system, and was eventually approved by the U.S. Citizenship and Immigration Services (USCIS) of the U.S. Department of Homeland Security (USDHS).

35.     Plaintiff did not know that Ultimate Care, Inc. sponsored her as an H-1B employee, until Defendants informed her of the H-1B approval, even as Defendants reiterated to her that she would be their employee pursuant to the signed employment contract.

36.     Defendants provided Plaintiff with the necessary immigration sponsorship documents for her to be able to secure her H-1B visa to come and enter the United States. Defendants instructed her to tell the U.S. Embassy consul that she would allegedly be working for her H-1B petitioner (Ultimate Care, Inc.) in Delray Beach, FL.

37.     The U.S. Embassy in Manila, Philippines issued Plaintiff's H-1B visa on September 11, 2018.

38.     With her H-1B visa, Plaintiff entered the United States on November 9, 2018.

39.     Upon her arrival in Florida, Plaintiff was provided accommodations by Defendants and was given orientation and training for about four weeks.

40.     During her orientation period, Plaintiff was not compensated by Defendants her regular wages pursuant to the signed employment contract. She was not paid the prevailing wage rate of a Physical Therapist.

41.     After Plaintiff completed her orientation, Defendants did not compensate her with the promised start-up compensation of the net amount of two thousand five hundred dollars ($2,500.00).

42.     In or about the second week of December 2018, Defendants executed a Therapist Assignment Confirmation whereby Plaintiff was instructed to work as a physical therapist (in-patient and out-patient PT) with Defendants' client, Lovelace Regional Hospital, in Roswell, New Mexico, from December 17, 2018, with an hourly wage rate of $30.00.

43.     Even while Defendants assigned Plaintiff to work in Lovelace Regional Hospital, it was Defendants' client, Ultimate Care, Inc., that issued Plaintiff's pay stubs, at the rate of $35.22 per hour.

44.     Upon information and belief, the hourly wage rate of $35.22 paid to the Plaintiff was in conformity with the U.S. Department of Labor's (USDOL's) prevailing wage rate for the position of a Physical Therapist in Roswell, New Mexico, where Plaintiff performed her services.

45.     Defendants did not assign Plaintiff to work as a Physical Therapist in Delray Beach, FL, contrary to what they had earlier represented to her or to the USCIS.

46.     Not knowing U.S. immigration rules and regulations, and relying on Defendants' instructions to be legal, Plaintiff went to work as a Physical Therapist in Roswell, New Mexico, where Defendants had assigned her.

47.     On June 15, 2019, Plaintiff's H-1B status with Defendants' client, Ultimate Care, Inc., expired.

48.     In June 2019, Defendants transferred Plaintiff to work as an out-patient Physical Therapist in Kirtland, New Mexico (San Juan County), with another client, ApexNetwork Physical Therapy.

49.     Defendants required Plaintiff to render her services in San Juan County, New Mexico from June 19, 2019 through October 17, 2019.

50.     Upon information and belief, it was more than a month after Plaintiff's H-1B status had expired, or in or about third week of July 2019, that Defendant MedPro filed an H-1B transfer petition on behalf of the Plaintiff to formally transfer Plaintiff under its sponsorship.

51.     Upon information and belief, as a prerequisite to filing the H-1B transfer petition, Defendants MedPro and Jeffrey secured a labor condition application with the U.S. Department of Labor whereby they promised to pay their beneficiary, herein Plaintiff, the prevailing wage rate of $34.26.

52.     Despite their promise to the U.S. Department of Labor and despite their contractual obligation to pay Plaintiff the prevailing wage rate, Defendants paid Plaintiff the hourly wage rate of only $34.14, which, upon information and belief, was not in conformity with the USDOL's prevailing wage rate for the position of Physical Therapist in San Juan County, New Mexico.

53.     Upon information and belief, the prevailing wage rate for the position of Physical Therapist in San Juan County, New Mexico for the period starting on July 1, 2019 was $34.26 per hour.

54.     Moreover, Defendants regularly deducted some amount of money from Plaintiff's weekly compensation to reimburse themselves of their costs for bringing Plaintiff to the United States and for deploying her to her work assignments.

55.     Upon information and belief, deducting from Plaintiff's weekly compensation for business expenses and costs, especially H-1B expenses which are, by law, supposed to be borne only by the H-1B petitioning employer, had the effect of decreasing Plaintiff's weekly compensation well below the prevailing wage rates.

56.     Upon information and belief, on or about August 6, 2019, the USCIS sent Defendants a request for evidence (RFE) in connection with their H-1B transfer petition on behalf of the Plaintiff.

57.     Despite the fact that Defendants had filed the H-1B transfer petition as a premium processing or expedited case, they were not able to and could not promptly comply with the USCIS's request for evidence.

58.     Upon information and belief, Defendants could not promptly comply with the USCIS's request for evidence because they could not justify why they did not timely file the H-1B transfer petition, it having been filed more than one month after Plaintiff's H-1B status had already expired.

59.     Upon information and belief, Defendants could not promptly comply with the USCIS's request for evidence because they could not explain why they did not assign Plaintiff to the worksite they had promised the USCIS in her previous H-1B petitions.

60.     Upon information and belief, Defendants could not promptly comply with the USCIS's request for evidence because they could not explain why they required Plaintiff to start working in some worksite without having filed first the requisite amended H-1B petition.

61.     Defendants had assigned Plaintiff to work in a worksite different from the worksite they represented in the H-1B petition to be Plaintiff's worksite address, and/or had

required Plaintiff to start working in another worksite without first having filed the requisite amended/new H-1B petition.

62.    With Defendants making deductions from Plaintiff's weekly compensation for expenses and costs that should be borne only by Defendants, Plaintiff was actually paid much less than the prevailing wage rates on an hourly basis.

63.    Upon information and belief, the Defendants engaged and are engaging in a policy and practice of paying Plaintiff and other Filipino physical therapists less than the prevailing wages required by their employment contracts.

64.    The Defendants have engaged and are engaging in a deliberate scheme, pattern and plan intended to cause Plaintiff and other Filipino physical therapists to believe that they would suffer serious harm if they tried to leave the Defendants' employ or find other employment.

65.    The Defendants' standard employment contract provides that the Healthcare Professional cannot stop working before their four-year term agreement unless and until they give Defendants "payment due to pretermination", which consisted of "actual damages" including "costs and expenses" "associated with professional examinations, English examinations, travel, credentialing, visa screen services, State licensure, Immigration, transportation to the U.S. and Employer-provided housing in the U.S." The employment contract likewise provides that the Healthcare Professional shall be liable for "all court costs, expenses, arbitration or mediation costs and expenses, collection fees and costs, and reasonable attorney's fees".

66.     Upon information and belief, Defendants have in the past required other Filipino physical therapists who decided to preterminate their four-year employment contract to pay them a penalty ranging in average from almost $20,000 to more than $30,000.

67.     The "payment due to pretermination" indenture provision embedded in Defendants' standard employment contract is designed to coerce the Plaintiff into continuing her employment with the Defendants.

68.     The amount of the "payment due to pretermination" indenture is disproportionate to the actual costs incurred by the Defendants.

69.     The "payment due to pretermination" indenture is disproportionate to the compensation paid to the Plaintiff.

70.     The purpose of the "payment due to pretermination" indenture is not to compensate Defendants for actual or potential damages.

71.     The purpose of the "payment due to pretermination" indenture is to obtain and provide Plaintiff's labor and services to Defendants and their clients.

72.     Defendants are and were able to calculate the amount of actual damages they would suffer in the event Plaintiff breached the employment contract.

73.     Plaintiff reasonably feared that Defendants would sue her for the "payment due to pretermination" indenture and other provisions in the employment contract.

74.     The Defendants' standard employment contract also provides a non-compete penalty that applies if the Plaintiff leaves before the end of the term period. In that event, the contract purports to prohibit the Plaintiff from seeking any employment with "any other entity or individual to locate, identify and secure work in the United States, unless agreed to in writing by the Employer" for a period of one year.

75.     The temporal, geographic and substantive scope of the non-compete penalty creates an unreasonable restraint on Plaintiff's ability to practice her profession.

76.     The temporal, geographic and substantive scope of the non-compete penalty is broader than necessary to protect any legitimate business interests of Defendants.

77.     The purpose of the non-compete penalty is not to protect any legitimate business interests of Defendants.

78.     The purpose of the non-compete penalty is to obtain and provide Plaintiff's labor and services to Defendants and their clients.

79.     The purpose of the non-compete provision is to deter Plaintiff from leaving her employment with Defendants.

80.     Plaintiff reasonably fears that potential employers will not hire her as long as Defendants may sue them and any potential employers for violation of the non-compete penalty in the employment contract.

81.     Plaintiff reasonably fears that Defendants will sue her for breach of the non-compete penalty in the employment contract if she tried to practice her profession with any other employer.

82.     Plaintiff reasonably fears that the costs of defending herself against Defendants' threatened legal actions will cause her to suffer serious harm.

83.     The "payment due to pretermination" indenture and the non-compete penalty are part of a contract of adhesion that Defendants obtained as a result of unequal sophistication and bargaining power.

**FIRST CAUSE OF ACTION**
**Violation of the Trafficking Victims Protection Act**
**18 U.S.C. § 1595**

84.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

85.     Defendants knowingly provided and obtained the labor and services of Plaintiff by means of the abuse or threatened abuse of law or legal process, including without limitation, the use or threatened use of a law or legal process to exert pressure on Plaintiff to continue working for the Defendants and to refrain from seeking employment elsewhere.

86.     Defendants knowingly provided and obtained the labor and services of Plaintiff by means of serious harm and threats of serious harm to Plaintiff, including without limitation, psychological, financial or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstance to perform or to continue performing labor or services in order to avoid incurring that harm.

87.     Defendants knowingly provided and obtained the labor and services of Plaintiff by means of a scheme, plan, or pattern intended to cause Plaintiff to believe that, if she did not perform such labor or services, she would suffer serious harm, including without limitation, psychological, financial or reputational harm, that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

88.     Defendants knowingly benefited, financially or by receiving other value, from participation in a venture which has engaged in the providing or obtaining of labor or services by the means described above, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by such means.

89.     Defendants knowingly recruited, transported, provided, and obtained Plaintiff for labor or services in violation of 18 U.S.C. §§ 1589, 1590, 1594(a) and 1594(b).

90.     By reason of the conduct described above, Defendants were perpetrators of violations of 18 U.S.C. §§ 1589, 1590, 1594(a) and 1594(b).

91.     Plaintiff suffered damages as a direct and proximate result of the Defendants' conduct.

92.     Plaintiff is entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorney's fees and the costs of this action.

## SECOND CAUSE OF ACTION
### Violation of the Trafficking Victims Protection Act
### 18 U.S.C. § 1594(b)

93.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

94.     Defendants conspired with one another to violate 18 U.S.C. §§ 1589 and 1590.

95.     Defendants agreed to provide and obtain the labor and services of Plaintiff by means of the abuse or threatened abuse of law or legal process, including without limitation, the use or threatened use of a law or legal process to exert pressure on Plaintiff to continue working for the Defendants and to refrain from seeking employment elsewhere.

96.     Defendants agreed to provide and obtain the labor and services of Plaintiff by means of serious harm and threats of serious harm to Plaintiff, including without limitation, psychological, financial or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstance to perform or to continue performing labor or services in order to avoid incurring that harm.

97.     Defendants agreed to provide and obtain the labor and services of Plaintiff by means of a scheme, plan, or pattern intended to cause Plaintiff to believe that, if she did not perform such labor or services, she would suffer serious harm, including without limitation,

psychological, financial or reputational harm, that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

98.     Defendants agreed to benefit, financially or by receiving other value, from participation in a venture which has engaged in the providing or obtaining of labor or services by the means described above, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by such means.

99.     Defendants agreed to recruit, transport, provide, and obtain Plaintiff for labor or services in violation of 18 U.S.C. §§ 1589 and 1590.

100.     Each of the Defendants engaged in at least one overt act in furtherance of the conspiracy, including:

    a)     Defendant MedPro recruited Plaintiff in the Philippines to work for the Defendants in the United States, and after Plaintiff's arrival in the United States, warned her of the serious harm she would suffer if she attempted to stop working for the Defendants or to seek employment elsewhere.

    b)     Defendant MedPro failed to pay Plaintiff the prevailing wage rates pursuant to the employment contract for all of her work hours.

    c)     Defendant Jeffrey signed either immigration sponsorship forms or confirmation of assignments to Plaintiff who was made to perform and render physical therapy services.

    d)     Defendant Jeffrey obtained the services of Plaintiff knowing of the Healthcare Professional's "payment due to pretermination" indenture and "non-compete" provisions in her contract.

101.    Each of the Defendants intentionally engaged in these acts and additional acts in furtherance of their agreed plan to deny Plaintiff the compensation she was entitled under the employment agreement and to coerce Plaintiff to continue working for the Defendants and not to seek employment elsewhere.

102.    Plaintiff suffered damages as a direct and proximate result of the Defendants' conspiracy.

103.    Plaintiff is entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorney's fees and the costs of this action.

### THIRD CAUSE OF ACTION
### Action for Declaratory Judgment

104.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

105.    Defendants' threats to enforce the so-called "payment due to pretermination" indenture clause and non-compete provisions of the employment contract constitute threats of serious harm within the meaning of the Trafficking Victims Protection Act.

106.    Plaintiff has been compelled to perform and to continue performing labor or services for Defendant MedPro in order to avoid incurring that harm.

107.    Defendant MedPro's threats to commence legal action against Plaintiff to enforce the indenture clause and non-compete provision of the employment contract are designed to cause her to continue working for the Defendants and refrain from leaving her employment, notwithstanding their failure to pay Plaintiff the legally required and/or contracted compensation.

108.    Plaintiff has been compelled to perform and to continue performing labor or services for Defendant MedPro as a result of its threats.

17

109.   The 13th Amendment to the United States Constitution provides that involuntary servitude shall not exist within the United States or any place subject to their jurisdiction.

110.   The so-called "payment due to pretermination" clause and non-compete provisions in the employment contract are intended to keep Plaintiff in a position of involuntary servitude.

111.   The so-called "payment due to pretermination" clause and non-compete provisions in the employment contract have the effect of keeping Plaintiff in a position of involuntary servitude.

112.   A Court may not use its legal authority and power to enforce so-called "payment due to pretermination" indenture clause and non-compete provisions in an employment contract that have the purpose and effect of keeping Plaintiff in a position of involuntary servitude.

113.   The so-called "payment due to pretermination" clause in the employment contracts is an unenforceable penalty.

114.   The amount of the so-called "payment due to pretermination" is disproportionate to Defendant MedPro's actual or probable losses.

115.   Defendant MedPro's actual damages caused by a breach of the employment contracts are and were readily ascertainable.

116.   The amount of the so-called "payment due to pretermination" is disproportionate to the compensation of Plaintiff.

117.   The purpose and effect of the so-called "payment due to pretermination" clause is to coerce Plaintiff into continuing to work for Defendant MedPro.

118.   The so-called "payment due to pretermination" clause was the result of unequal bargaining power and a contract of adhesion.

119.   The duration and geographic scope of the non-compete provisions in the employment contract are broader than necessary to protect any legitimate business interests of Defendant MedPro.

120.   The duration and geographic scope of the non-compete provisions in the employment contract are not necessary to prevent possible solicitation or disclosure of trade secrets.

121.   The duration and geographic scope of the non-compete provisions in the employment contract are not necessary to prevent possible release of confidential information regarding Defendant MedPro's customers.

122.   The duration and geographic scope of the non-compete provisions in the employment contract impose unreasonable burdens on and barriers to the ability of Plaintiff to practice her profession and earn an income.

123.   The geographic scope of the non-compete provision of the employment contract is unreasonably ambiguous and indefinite.

124.   The duration and geographic scope of the non-compete provision in the employment contract are contrary to the state's strong public policy in favor of competition engendered by the uninhibited flow of services, talent, and ideas.

125.   The duration and scope of the non-compete provision in the employment contract are contrary to the state's strong public policy in favor of allowing employees to apply to their own best advantage the skills and knowledge acquired by the overall experience of their previous employment.

126.   The duration and scope of the non-compete provision in the employment contract are unsupported by continued consideration for Plaintiff's loyalty and good will.

127.   The duration and geographic scope of the non-compete provision in the employment contract are designed for improper purposes, including to coerce Plaintiff into continuing to work for Defendant MedPro.

128.   Plaintiff has a definite and concrete dispute with Defendant MedPro concerning the enforceability of the so-called "payment due to pretermination" indenture provision and the non-compete provision in the employment contract.

129.   The dispute touches the legal relations of parties having adverse legal interests.

130.   The dispute is real and substantial.

131.   The dispute admits of specific relief through a decree of a conclusive character.

132.   The dispute involves a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

133.   Defendant MedPro's threats to enforce the "payment due to pretermination" clause and the non-compete provision would work to Plaintiff's detriment and injury, and for which she has no adequate remedy at law.

134.   For the above reasons, the "payment due to pretermination" clause and non-compete provision in the employment agreement are void and unenforceable and in contravention of the laws of the State of Florida, in that these are a restraint of trade, against public policy, and constitute an unlawful coercive device designed to depress wages and deprive Plaintiff of the opportunity to resign for good cause, and would effectively compel someone to continue working.

135.   Plaintiff's services as a Physical Therapist are not unique or extraordinary, nor are they of a character that involves the acquisition of any trade secrets of Defendants.  Plaintiff's

skills, ability and knowledge obtained in the course of her employment are not the property of Defendants.

136. The "payment due to pretermination" clause and non-compete provision contained in the employment agreement are not reasonably necessary to protect any legitimate business interests of the Defendants, and are therefore unenforceable and contrary to public policy as an unnecessary restrain of employment.

137. The employment agreement containing the "payment due to pretermination" provision is harsh, oppressive, inequitable and unenforceable. This is an adhesive contract frowned upon in law.

138. The "payment due to pretermination" indenture provision of the employment contract is actually a penalty.

139. As a direct and proximate result of Defendant MedPro's threats to enforce the "payment due to pretermination" indenture and non-compete provisions by legal action, Plaintiff has suffered and will continue to suffer in the future, direct and consequential damages, including but not limited to, the loss of the ability to exercise her rights to leave her employment for good cause, and to exercise her physical therapy profession in another environment free of concerns or issues that would jeopardize her physical therapy license, her health, and the delivery of quality patient care to the patients.

140. By reason of the foregoing, an actual and justiciable controversy exists between Plaintiff, on one hand, and Defendant MedPro, on the other hand. Plaintiff seeks a declaratory judgment that the "payment due to pretermination" indenture and non-compete provisions in the employment agreement are void and unenforceable.

## FOURTH CAUSE OF ACTION
### Breach of Contract

141.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

142.    Plaintiff entered into a valid and binding employment contract with Defendants MedPro and Jeffrey.

143.    Plaintiff substantially performed under the contract.

144.    Defendants MedPro and Jeffrey breached the contract by failing to pay Plaintiff the correct prevailing wage rate promised in her employment contract, starting on or about July 1, 2019.

145.    Defendants MedPro and Jeffrey breached the contract by failing to pay Plaintiff the one-time start-up compensation in the net amount of Two Thousand Five Hundred Dollars ($2,500.00).

146.    Defendants MedPro and Jeffrey breached the contract by unlawfully making deductions from Plaintiff's weekly compensation, which had the effect of depressing Plaintiff's wages to way below the prevailing wage rates.

147.    Defendants MedPro and Jeffrey breached the contract by failing to pay Plaintiff her regular weekly compensation starting from October 18, 2019, which is still within the four-year employment term.

148.    In fact, Defendants MedPro and Jeffrey breached the contract by failing to pay Plaintiff any compensation at all for Plaintiff's last week of work in October 2019. Defendants likewise did not pay Plaintiff's earned 71.06 of PTO hours.

149.    Plaintiff suffered damages as a direct and proximate result of the breach.

150.    Plaintiff is entitled to compensatory damages for breach of contract in amounts to be determined at trial.

<u>**PRAYER**</u>

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

(a)      Against both Defendants, jointly and severally, awarding Plaintiff compensatory and punitive damages for violations of the Trafficking Victims Protection Act; and compensatory and liquidated damages for failure to pay the correct prevailing wage rates and the one-time start-up compensation;

(b)      Against Defendant MedPro, declaring that the so-called "payment due to pretermination" indenture provision and the non-compete provision in the employment contract are unenforceable under the Trafficking Victims Protection Act, 18 U.S.C. § 1589, *et seq.*, the 13th Amendment to the United States Constitution, and common law; and enjoining Defendant MedPro from enforcing or threatening to enforce the so-called "payment due to pretermination" indenture provision and the non-compete provision in the employment contract against Plaintiff in any forum;

(c)      An award of prejudgment and post-judgment interests;

(d)      An award of costs and expenses of this action, together with reasonable attorneys' fees;

(e)      Such other and further relief as this Court deems just and proper.

Respectfully submitted.
December 5 , 2019. Holloman AFB, New Mexico.

ROCHELL GERONIMO
2802B Quay Loop
Holloman AFB, New Mexico 88330
Tel. No. 754-281-6917
Email: rochellgeronimo@yahoo.com

## VERIFICATION

STATE OF FLORIDA        )
COUNTY OF Broward    ) S.S.

I, ROCHELL GERONIMO, of legal age, and presently residing in Holloman AFB, NM,
after having been sworn in accordance with law, hereby state that I am the Plaintiff in the within
Action/Complaint. I have read the foregoing Complaint and know the contents thereof. The
contents are true to my knowledge, except as to matters therein stated to be alleged upon
information and belief, and as to those matters, I believe them to be true.

ROCHELL GERONIMO

SUBSCRIBED AND SWORN to before me this ___5th___ day of December 2019.

Notary Public

RAMONA RADU
Notary Public - State of Florida
Commission # GG 119552
My Comm. Expires Sep 18, 2021

24